NO. 12-14673

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

| | |
|---|---|
| JUDY WEEKES-WALKER,           ) | |
| MONA THOMAS, KEYLA EXFORD,) | |
| RITCHIE L. STALNAKER, on          ) | On appeal from the United |
| behalf of themselves and all others   ) | States District Court for |
| similarly situated,                            ) | the Middle District of Alabama, |
|                                                          ) | Case No. 3:10-CV-895-MEF |
|            Plaintiff/Appellee,            ) | |
|                                                          ) | |
| v.                                                      ) | |
|                                                          ) | |
| MACON COUNTY GREYHOUND   ) | |
| PARK, INC.,                                     ) | |
|                                                          ) | |
|            Defendant/Appellant.        ) | |

---

## REPLY BRIEF OF APPELLANT MACON
## COUNTY GREYHOUND PARK, INC.

---

**Counsel for Appellant:**

Patrick L. W. Sefton, Esq.           Fred D. Gray, Esq.
Robert E. Sasser, Esq.                Stanley F. Gray, Esq.
Timothy J. Gallagher, Esq.         Gray, Langford, Sapp, McGowan,
Sasser, Sefton, Brown, Tipton      Gray & Nathanson
& Davis, P.C.                              P.O. Box 830239
2000 Interstate Park Drive, Suite 300   Tuskegee, Alabama 36083-0239
Montgomery, Alabama 36109      Telephone:  (334) 727-4830
Telephone:  (334) 532-3400

K:\DOCLIB\49181\14\00230044.WPD

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Record References in Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

ARGUMENT AND CITATIONS TO AUTHORITY. . . . . . . . . . . . . . . . . . . . . . 1

    I.     MCGP is Not Procedurally Barred from Asserting the
            Unforeseeable Business Circumstances Defense.. . . . . . . . . . . . . . . 1

          A.     Individualized, Written Notice is Not Always Required
                  in Order to Assert the Unforeseeable Business
                  Circumstances Defense.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          B.     The Present Case Presents a Unique Factual Scenario
                  Wherein the Affected Employees Had Access to the
                  Relevant Information Related to the Closing and
                  Were Aware of the Reasons for the Layoffs.. . . . . . . . . . . . . 10

    II.    The January 5, 2010, and February 4, 2010 Layoffs Should
           Not Be Aggregated as a Matter of Law, and Therefore the
           WARN Act is Not Applicable to the January Layoffs.. . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF CITATIONS

## CASES:

In re Advanced Accessory Sys., LLC,
        443 B.R. 762-763 (Bankr. E.D. Mich. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 9

Alarcon v. Keller Industries, Inc.,
        27 F.3d 386, 389 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Allen v. Sybase, Inc.,
        683 F.3d 882, 884, 889 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Old Electralloy Corp.,
        162 B.R. 121 (Bankr. W.D. Pa. 1993), . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hotel Employees & Rest. Employees Int'l Union Local 54
v. Elsinore Shore Associates,
        173 F.3d 175 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In Re Quantegy, Inc.,
        343 B.R. 689 (M.D. Ala. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

In re Watson,
        311 F.3d 760 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Roquet v. Arthur Andersen LLP,
        398 F.3d 591 (7th Cir. 2005)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

United Steel Workers of Am. Local 2660
v. U.S. Steel Corp.,
        683F.3d 882, 884 (8th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

## STATUTES AND REGULATIONS:

29 U.S.C. § 2202(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 2102(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20 C.F.R. § 639.7(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

683 F.3d 882, 884 (8th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

683 F.3d 889. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**OTHER:**

H.R. Rep. No. 99-336 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

S. Rep. No. 100-62 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

# TABLE OF RECORD REFERENCES IN THE REPLY BRIEF

Docket #                                                                    Brief Page #

## Volume 1

43-1        Affidavit of Myra Sides .. . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-2        Affidavit of Anmarie Young . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-3        Affidavit of Rob Stewart . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-4        Affidavit of Hulet (Beth) Hornsby . . . . . . . . . . . . . . . 5, 7, 8, 10

43-5        Affidavit of Lucretia Hornsby . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-6        Affidavit of Ritchie L. Stalnaker . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-7        Affidavit of Shannon Rangel . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-8        Affidavit of Preston Young . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-9        Affidavit of Dawn Hammock . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-10       Affidavit of Eric Collins . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-11       Affidavit of Costio Tutt . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-13       Affidavit of Celina Jordan . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-14       Affidavit of Ocie Butler . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-19       Affidavit of April Langford. . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

43-20       Affidavit of Keyla Exford . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

**Volume 2**

74    MCGP's Brief in Support of Motion
      for Summary Judgment . . . . . . . . . . . . . . . 1, 5, 7, 8, 10, 11, 12, 13, 14

**Volume 6**

82    Plaintiffs' Brief in Opposition to MCGP's
      Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 2, 35, 36

**Volume 7**

86    MCGP's Reply to Plaintiffs' Response in Opposition
      to Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . 1, 5, 14

106   Joint Stipulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

113   Memorandum Opinion and Order. . . . . . . . . . . . . . . . . . . . 14, 15, 16

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    MCGP is Not Procedurally Barred from Asserting the Unforeseeable Business Circumstances Defense.**

**A.    Individualized, Written Notice is Not Always Required in Order to Assert the Unforeseeable Business Circumstances Defense.**

As set forth in Macon County Greyhound Park, Inc's ("MCGP") Brief of the Appellant, MCGP is entitled to assert the unforeseeable business circumstances defense as a matter of law as to both the February and August layoffs. <u>See</u> Brief of Appellant at pp. 16-21, 37-41; <u>see</u> <u>also</u> Doc. 74 at pp. 21-31; Doc. 86 at pp. 13-16. Generally, an "employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C.A. § 2102(b)(2). Plaintiffs have attempted to argue that even if the unforeseeable business circumstances make notice impossible up to the day of the layoffs an employer must provide *individual written* notice on that day or soon after explaining the reason for the reduced notice. However, as explained previously, such individualized written notice is not required to assert the unforeseeable business circumstances defense. <u>See</u> Brief of Appellant at pp. 16-21, 37-41; Doc. 74 at pp. 21-31.

Specifically, Plaintiffs make the erroneous argument that the billboard notices, press releases and internet postings do not constitute sufficient notice under the WARN Act because they do not provide an explanation for the reduced notification period. See Appellees' Brief at pp 17-18. However, the notices provided by MCGP to the public and its employees specifically reference the illegal raids and Governor Riley's attempts to "destroy" Victoryland as the reasons for the closure. The clear inference is that MCGP could not predict the perceived illegal raid of the Governor's task force on gambling, much less predict with any degree of certainty when such a raid would occur.

In United Steel Workers of Am. Local 2660 v. U.S. Steel Corp., an employer was forced to idle certain plants due to the economic downturn of 2008 and the resulting lower demand for the company's products. See 683 F.3d 882, 884 (8th Cir. 2012). The employer provided the following notice on December 3, 2008:

> The purpose of this letter is to notify you regarding the layoff of certain employees affected by the Company's intention to temporarily idle the operations at Keetac due to the recent major and unanticipated downturn in the United States and global economy, and the resultant sharply lower demand for the plant's products.... The information in this notice is based upon the best information available to the Company as of this date and is being provided as promptly as practicable in light of the extraordinary and rapidly declining business circumstances.

United Steel Workers of Am. Local 2660, 683 F.3d at 884. The employer asserted

that it was not liable for giving less than 60 days notice due to the unforeseeable business circumstances defense based on the economic downturn. The union, however, argued that the employer failed to present sufficient evidence to establish that the effects of the 2008 economic downturn on the steelmaking industry were an unforeseeable business circumstance as of sixty days before the layoff began, given that the general economic downturn was well-known over sixty days prior to the layoffs/plant shutdown. Id. at 886. Similar to the Plaintiffs in the present case, the union also argued that the content of the notice was insufficient under the WARN Act. Id.

The court analyzed the facts of the case and concluded that the unforeseeable business circumstances defense did apply, finding that the "case certainly is not analogous to the prototypical WARN Act violation of 'a company that secretly plotted for a long time to move its operation to Mexico and closed up shop without any notice to its employees.' Roquet, 398 F.3d at 591 (7th Cir. 2005). Rather, U.S. Steel thought it could survive the economic downturn until the unprecedented effects on the steel industry manifested themselves in late November 2008, thus requiring immediate action in its commercially reasonable business judgments." United Steel Workers of Am. Local 2660, 683 F.3d at 888. The court further held that:

The Union also challenges the sufficiency of the written notice, claiming that

the notice was deficient under the WARN Act's requirement that the employer "shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). The applicable Department of Labor regulations further require that "[a]ll notice must be specific." 20 C.F.R. § 639.7(a)(1). We conclude that U.S. Steel's notice satisfied these requirements. **The notice discussed the underlying factual events leading to a reduced notice period and thus provided the employees an explanation of U.S. Steel's difficulties and the rationale for the reduced notice period.**

Id. at 889 (emphasis added).

All that is required under the WARN Act is a "brief statement of the basis for reducing the notification period." See 29 U.S.C. 2102(b)(3). The WARN Act, therefore, does not require a detailed explanation, which the Plaintiffs appear to claim they were entitled to in this case. As held in United Steel Workers of Am. Local 2660, notices that discuss the underlying factual events leading to a reduced notice period can be sufficient notice under the WARN Act. See 683 F.3d at 889. In the present case, the forms of notice provided by MCGP specifically reference the governmental raid and other perceived illegal actions of the Governor's Task Force as the underlying factual events leading to the closing/layoffs, and therefore satisfy the WARN Act by putting the public, including MCGP's employees, on notice as to why MCGP temporarily shutdown. Such notice clearly gives information of unforeseeable events that would reduce the ability of MCGP to give advanced notification of the February and August layoffs. While MCGP did not provide the written notice directly

to its employees, the forms of notice MCGP did provide, including the billboard notices, press releases and internet postings, conveyed the requisite information to the affected employees, and, significantly, the employees in this case were actually aware of the reasons for the layoffs. See Doc. 74-3 at pp. 21, 37-39; Doc. 74-4 at pp. 19-20, 23-26, 28; 31-32; Doc. 74-5 at pp. 26, 51; 74-6 at pp. 31-36, 40-42, 52-55; see also Docs. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-13, 43-14, 43-19, 43-20.

Thus, because the content of the forms of notice provided by MCGP was sufficient, the remaining question is whether the form of the notice was sufficient. MCGP relies on its analysis of the relevant case law contained in its Brief of the Appellant to show that individualized, written notice is not always required. See Brief of Appellant at pp. 16-21, 37-41; see also Doc. 74 at pp. 21-31; Doc. 86 at pp. 13-16. In order to support the proposition that individual written notice is always required, Plaintiffs rely primarily on In Re Quantegy, Inc., which is a bankruptcy case from the Middle District of Alabama. 343 B.R. 689 (M.D. Ala. 2006). Plaintiffs seem to assert that Quantegy held that an employer must give individualized written notice to each employee containing a brief statement explaining the basis for reducing the notice period. See Doc. 82 at pp. 19-22. Plaintiffs incorrectly attempt to argue that the court in Quantegy did not allow the employer to assert the unforeseeable business

circumstances defense because of the means that the notice was provided. Id.  In that case the employer posted notice on the factory doors that the plant is "closed until further notice pending financial restructuring," and to local authorities stating that the cessation in operations is "due to financial issues that have plagued the industry and Quantegy for some time." Rather than hold that the form of notice was insufficient, as Plaintiffs appear to claim, the court actually found that the defense was unavailable because the notice did not provide a brief statement of the basis for reducing the notice period. The Court never stated that means of notice was insufficient, as Plaintiffs attempt to allege. See Doc. 82 at pp. 19-22.

Further, during its analysis of whether the employer was entitled to assert the unforeseeable business circumstances defense, the court in Quantegy relied on Alarcon v. Keller Industries, Inc., 27 F.3d 386, 389 (9th Cir.1994). The Quantegy court explained as follows:

> The Ninth Circuit considered the purpose of the statute in its entirety, acknowledging that it is "difficult to ascertain" the purpose for the brief statement "from either the language of the statute or its legislative history." The Ninth Circuit then concluded that the "purpose in requiring a brief statement must have been to provide employees with information that would assist them in determining whether the notice period was properly shortened." *Id.* at 389.

In Quantegy and in Alarcon, the reason for the reduced notice periods involved the financial condition of the companies at issue. Such information is typically not shared

with and not available to the employees of the company. The large scale layoffs in those cases with no notice were based on information unknown by the employees, which is precisely what the WARN Act was designed to prevent. See H.R. Rep. No. 99-336 (1985); S. Rep. No. 100-62 (1987). Thus, in that context it makes sense to conclude that employees must receive a brief statement that would assist them in determining whether the notice period was properly shortened. However, in other scenarios, such as the case at hand, employees may be completely aware of the reason for the reduced notice period, and therefore there is no need for an after the fact notice explaining the basis for a reduced notice period.

In the present case, the billboard notices, press releases and internet posting previously referenced specifically cite the illegal raids and Governor Riley's attempts to "destroy" Victoryland. See Doc 74-1 at Exhibit 2.  These notices therefore specifically reference the reasons for the reduced notice, including the perceived illegal actions of the Governor's Task Force. Further, Plaintiffs admit freely that they were aware that the raids were the reason for the layoffs. See Doc. 74-3 at 21, 37-39; Doc. 74-4 at pp. 19-20, 23-26, 28; 31-32; Doc. 74-5 at pp. 26, 51; 74-6 at pp. 31-36, 40-42, 52-55; see also Docs. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-13, 43-14, 43-19, 43-20. The circumstances at issue in this case are unique in that the information regarding the raids that led to the February and August

layoffs was known by the employees of MCGP, through their presence at the company and wide spread media coverage, in addition to MCGP's own efforts. See Doc. 74-3 at 21, 37-39; Doc. 74-4 at pp. 19-20, 23-26, 28; 31-32; Doc. 74-5 at pp. 26, 51; 74-6 at pp. 31-36, 40-42, 52-55; see also Docs. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-13, 43-14, 43-19, 43-20. In fact many of the former employees were present when the raids occurred. Id. Thus, in the present case there was no need for MCGP to provide individualized written notice that would assist the employees in determining whether the notice period was properly shortened. The employees were already aware of that through firsthand knowledge, extensive media coverage and the efforts of MCGP to raise awareness of the issue. Therefore, while Plaintiffs mischaracterize the holding of Quantegy, the reality is that the notice provided by MCGP was actually sufficient under the clear language of the WARN Act. Further, based on the purpose of requiring a brief statement of the basis for reducing the notice period as set forth in Alarcon, such notice would not be necessary to fulfill that purpose in the present case because it was already fulfilled based on the knowledge of and information available to the Plaintiffs. Thus, not only did MCGP fulfill the requirements of the WARN Act to assert the unforeseen business circumstances defense, it also fulfilled the spirit of the act as well.

In addition to relying on Quantegy, Plaintiffs attempt to distinguish the cases

relied on by MCGP, such as In re Advanced Accessory Sys., LLC, 443 B.R. at

762-63, Roquet, 398 F.3d 585 (7th Cir. 2005), and In re Watson, 311 F.3d 760 (6th

Cir. 2012), by making the unsupported assertion that the procedural bar defense was

not raised in those cases. However, Plaintiffs provide no citation to support the notion

that the defense was not raised in those case. The clear holdings of those cases allow

the unforeseeable business circumstances defense to be raised without individualized,

written notice to the former employees.

Finally, rather than produce more analogous cases, Plaintiffs attempt to

distinguish the present case from the analogous unforeseeable business circumstances

cases of Roquet v. Arthur Andersen LLP and Hotel Employees & Rest. Employees

Int'l Union Local 54 v. Elsinore Shore Associates, 173 F.3d 175 (3d Cir. 1999). Those

cases are cited to establish that the facts and circumstances of the present case fit

squarely within the unforeseeable business circumstances defense, not to address the

question of whether individualized, written notice is required in order to assert the

unforeseeable business circumstances defense. MCGP relies on its analysis and

arguments contained in its Brief in Support of Summary Judgment and Brief of

Appellant in response to Plaintiffs' arguments. See Brief of Appellant at pp. 21-34;

Doc. 74 at pp. 21-31.

**B.    The Present Case Presents a Unique Factual Scenario Wherein the Affected Employees Had Access to the Relevant Information Related to the Closing and Were Aware of the Reasons for the Layoffs**.

In the present case, Plaintiffs admit MCGP did not attempt to hide the fact that a governmental raid or closure was possible. In fact, the Plaintiffs' own affidavits specifically allege that such a raid or closure was a known possibility. See Docs. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-13, 43-14, 43-19, 43-20. Further, MCGP undertook to meet with each employee laid off after the January layoffs in order to assist with unemployment issues. See Doc. 74-1 at ¶ 5. Also, MCGP met with employees on two separate occasions in February of 2010 and specifically addressed the February layoffs. See Doc. 74-1 at ¶ 9; Doc. 74-2 at pp. 236-238, 242-244.  Certain Plaintiffs admit that they were invited to attend or did attend the February meetings. See Doc. 74-4 at pp. 36-37; 74-5 at p. 32:7-18; 74-6 at pp. 54-58.  During those meetings the basis of the layoffs was discussed as well as other unemployment related topics. See Doc. 74-1 at ¶ 5, 9; 74-2 at pp. 236-238, 242-244. Additionally, MCGP posted on its website and interstate billboards that the bingo operations were closed as a result of the Governor's direction. See Doc. 74-1 at ¶ 9. After the August layoffs, MCGP notified its employees and customers of the reasons for this closing via internet and other media. See Doc. 74-1 at ¶ 15. The

notice posted on MCGP's website specifically set forth the government action as the reasons for the shutdown. See Doc. 74-1 and Exhibit 2 attached thereto. A significant percentage of laid off employees were re-hired or offered to be re-hired within six months after the January and February layoffs. These actions on behalf of MCGP establish that it complied with the spirit and purpose of the WARN Act to the extent possible under the circumstances and serve to establish as a matter of law that MCGP is entitled to assert the unforeseeable business circumstances defense.

Despite the contentions of the Plaintiffs, MCGP was not secretly planning a shut down as of a specific date. Instead, MCGP was actively pursuing litigation on a number of fronts to oppose what it reasonably believed were wrongful attempts by the government to interfere with and shutdown its business. See Doc. 74-1 at ¶ 6, 8, 13. Similar behavior has been deemed reasonable in the context of the unforeseeable business circumstances exception. See Roquet, 398 F.3d 585. Thus, as in In re Old Electralloy Corp., there were no secret plans to close MCGP's facilities. Further, while the "possibility" of a shut down existed, MCGP did not know for sure if, or specifically when, a government raid or closure would occur, and was optimistic that such an action would not occur, or would only be temporary. See Doc. 74-1 at ¶ 5. However, once the government raid was about to occur, MCGP had no choice but to close, as the raid would endanger its property and expose its customers to danger. See

Doc. 74-1 at ¶ 14. Even at the time the imminent governmental raid caused MCGP to temporarily halt operations in February, MCGP was optimistic that it would be able to open up within six months, thereby not running afoul of the WARN Act. This belief that the layoffs would be temporary was buttressed by MCGP's actions, as conceded by Plaintiffs, of rehiring a substantial number of employees after the layoffs.

One of the main reasons Congress initially considered the legislation that eventually became the WARN Act was due to the trend of large companies unexpectedly closing their facilities in the United States and moving their operations overseas, or otherwise conducting large scale layoffs with no notice based on information unknown by their employees. See H.R. Rep. No. 99-336 (1985); S. Rep. No. 100-62 (1987). The circumstances at issue in this case are unique in that the information regarding the raids that led to the February and August layoffs was known by the employees of MCGP, through their presence at the company and wide spread media coverage, as much as by MCGP itself. See Doc. 74-3 at 21, 37-39; 74-4 at pp. 19-20, 23-26, 28; 31-32; 74-5 at pp. 26, 51; 74-6 at pp. 31-36, 40-42, 52-55; see also Docs. 43-1, 43-2, 43-3, 43-4, 43-5, 43-6, 43-7, 43-8, 43-9, 43-10, 43-11, 43-13, 43-14, 43-19, 43-20. MCGP had no desire to layoff its employees in February or August, and those layoffs would not have occurred but for the actions of the

Page 12 of 19

Governor's Task Force. <u>See</u> Doc. 74-1 at ¶ 14. MCGP's actions combined with the knowledge of its employees of the potential raids served to provide at least as much notice as any individualized, written notice would have provided. This is especially true given the constitutional amendment relied on by MCGP and related legal proceedings that MCGP believed protected its electronic bingo operations.

MCGP provided sufficient and proper notice based on its understanding of the circumstances that led up to the layoffs. Further, MCGP attempted to communicate the basis for the layoffs though meetings held after the January and February layoffs as well as internet posting and through other forms of media, which adheres to the spirit of the WARN Act. Finally, the unique circumstances of this case combined with the actions of MCGP described above served to provide MCGP's employees with as much notice as possible of the February and August layoffs, which fulfills the spirit and purpose of the WARN Act. As a result, MCGP is entitled to assert the unforeseeable circumstances defense as a matter of law, and MCGP requests that this Court reverse the district court and order that MCGP is allowed as a matter of law to assert the unforeseeable business circumstances defense.

## II. The January 5, 2010, and February 4, 2010 Layoffs Should Not Be Aggregated as a Matter of Law, and Therefore the WARN Act is Not Applicable to the January Layoffs.

As explained in MCGP's Brief of the Appellant, the January layoffs did not

independently constitute a covered action under the WARN Act, and did not occur within 30 days of the February layoffs, and therefore should not be considered in conjunction with the February layoffs in determining if the WARN thresholds have been met. See Brief of Appellant at pp. 41-43; Doc. 74 at pp. 13-15; Doc. 86 at pp. 8-10. The district court correctly held that the January layoffs were not a Plant Closing and did not independently constitute a Mass Layoff under the WARN Act. See Doc. 113 at pp. 11-12. However, the district court incorrectly held that the January layoffs and February layoffs occurred "during any 30-day period" and should be considered in conjunction in determining the applicability of the WARN Act. Id. at pp. 16-19. Rather, based on the counting method established under the WARN Act, the January layoffs occurred 31 days prior to the February layoffs, and therefore the January layoffs are not considered in conjunction with the February layoffs in determining if the WARN Act thresholds have been met. As such, no WARN notice was required related to the January layoffs and MCGP is entitled to summary judgment as to the Plaintiffs laid off in January of 2010.

Plaintiffs now attempt to argue that it was really the February temporary shutdown that caused the employees laid of in January to suffer an employment loss under the WARN Act. However, this argument is legally and logically deficient. First, Plaintiffs cite the Joint stipulations in an attempt to show that the employees laid off

in January would have been re-hired within 6 months if not for the February shutdown. See Appellees' Brief at pp. 31-35. While it is true that the January layoffs were intended to be temporary in nature (see Doc. 106 at 2(c) and (d)), there was never any time set for re-hiring the employees and no indication to the employees or otherwise that the renovations would last less than 6 months. Plaintiffs essentially rely on an unprovable hypothetical assumption that the January layoffs would have lasted less than 6 months if the February shutdown had not occurred to conclude that the February layoffs actually caused the employees laid of in January to suffer an employment loss.[1] As such, it is clear the January layoffs should not be considered in conjunction with the February layoffs to determine the applicability of the WARN Act, and therefore the January layoffs are not actionable under the WARN Act.

## CONCLUSION

For the reasons stated above, and as set forth in the Brief of the Appellant, MCGP request that this Court reverse the district court Order granting summary judgment in favor of Plaintiffs as to liability (Doc. 113). MCGP urges this Court to

---

[1]Further, as explained in Allen v. Sybase, Inc., "WARN is less than clear with respect to mass layoffs occurring in an aggregation setting. As we highlight below, the statute and regulations generally speak in terms of planned, proposed, and foreseeable mass layoffs and employer liability that arises from failure to provide notice in those settings." 468 F.3d 642, 652 (10th Cir. 2006) (emphasis added). Thus, if the subsequent layoffs are not foreseeable it is unfair and inappropriate to require an employer to aggregate them for the purposes of determining WARN liability.

find that MCGP is entitled to assert the unforeseeable business circumstances defense as a matter of law, and that the forms of notice provide by MCGP were sufficient under the WARN Act. Further, for the reasons provided herein and as set forth in the Brief of the Appellant, MCGP requests that this Court reverse the district court's Order (Doc. 113) and rule that the January and February layoffs should not be aggregated as a matter of law because they did not occur "during any 30-day period" as required by the WARN Act, and therefore the WARN Act is not applicable to the January layoffs. Therefore, for the reasons set forth herein as supported by the record on appeal, MCGP requests that this Court reverse the district court's grant of summary judgment in favor of Plaintiffs.

Respectfully submitted,

s/ Patrick L. W. Sefton
Patrick L. W. Sefton
Bar Number:  ASB-8341-N47P
Robert E. Sasser
Bar Number:  ASB-6462-S81R
Timothy J. Gallagher
Bar Number:  ASB-2764-I67G
Attorneys for Macon County Greyhound Park, Inc.
Sasser, Sefton, Brown, Tipton & Davis, P.C.
P.O. Box 242127
Montgomery, AL 36124-2127
Telephone:  (334) 532.3400
Facsimile:  (334) 532.3434

E-mail: psefton@sasserlawfirm.com
       rsasser@sasserlawfirm.com
       tgallagher@sasserlawfirm.com

AND

s/ Fred D. Gray
Fred D. Gray
Bar Number:  ASB-1727-R63F
Stanley F. Gray
Bar Number:  ASB-8670-A56S
Counsel for Macon County Greyhound Park, Inc.
Gray, Langford, Sapp, McGowan
Gray & Nathanson
P.O. Box 830239
Tuskegee, AL 36083-0239
Telephone:  (334) 727.4830
Facsimile:  (334) 727.5877
E-mail:  fgray@glsmgn.com
        sgray@glsmgn.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [x]     this brief contains 4,054 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [x]     this brief has been prepared in a proportionally spaced typeface using Word Perfect 12 in size 14 Times New Roman Font

Dated: 1/14/13

                        s/ Patrick L. W. Sefton
                        Patrick L. W. Sefton
                        Bar Number:  ASB-8341-N47P
                        Attorney for Macon County Greyhound Park, Inc.
                        Sasser, Sefton, Brown, Tipton & Davis, P.C.
                        P.O. Box 242127
                        Montgomery, AL 36124-2127
                        Telephone:  (334) 532.3400
                        Facsimile:  (334) 532.3434
                        E-mail:  psefton@sasserlawfirm.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Reply Brief of the Appellant** has been electronically filed with, and sent via federal express delivery to, the Clerk of the Court, and mailed via first class U.S. mail postage prepaid to the following, on this the 14th day of January 2013:

Philip Dale Segrest, Esq.
The Segrest Law Firm
P.O. Box 780791
Tallassee, AL 36078
Attorney for Plaintiffs
Dale.Segrest@SegrestLaw.com

Robert S. Thompson, Esq.
Robert Simms Thompson, P.C.
308 North Elm Street
Tuskegee, AL 36083
Attorney for Plaintiffs
rstpc@aol.com

James B. Perrine, Esq.
Bailey & Glasser, LLP
201 Monroe Street, Suite 2170
Montgomery, AL 36104
Attorney for Plaintiffs
jbperrine@baileyglasser.com

David A. Hughes, Esq.
Charles A. Hardin, Esq.
Hardin & Hughes, LLP
2121 14th Street
Tuscaloosa, AL 35401
Attorneys for Plaintiffs
dhughes@hardinhughes.com
chardin@hardinhughes.com

David Lewis Selby II, Esq.
Bailey & Glasser, LLC
One Chase Corporate Center, Suite 400
Birmingham, AL 35244-7001
Attorney for Plaintiffs
dselby@baileyglassercom

s/ Patrick L. W. Sefton
Patrick L. W. Sefton
Bar Number:  ASB-8341-N47P
Attorney for Macon County Greyhound Park, Inc.
Sasser, Sefton, Brown, Tipton & Davis, P.C.
P.O. Box 242127
Montgomery, AL 36124-2127
Telephone:  (334) 532.3400
Facsimile:  (334) 532.3434
E-mail:  psefton@sasserlawfirm.com